IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

RENEL ANTHONY BREWER,

Petitioner,

v.

Case No. 23-CV-0483-SEH-CDL

GENTNER F. DRUMMOND,

Respondent.

OPINION AND ORDER

Petitioner Renel Anthony Brewer, a self-represented Oklahoma prisoner,[1]
seeks federal habeas relief through a Petition for Writ of Habeas Corpus
pursuant to 28 U.S.C. § 2254 ("Petition") [ECF No. 1].  Brewer claims he is
detained, in violation of his Fourteenth Amendment right to due process,
under the criminal judgment entered against him in Tulsa County District
Court Case No. CF-1999-0426.  This matter is before the Court on
Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus and Brief
in Support of the Motion to Dismiss.  ECF Nos. 7, 8.  Respondent asserts that
Brewer did not comply with 28 U.S.C. § 2244(b)'s procedural requirements
before filing a second or successive habeas petition and urges the Court to
dismiss the Petition for lack of jurisdiction.  Alternatively, Respondent

---

[1] Because Brewer appears without counsel, the Court must construe
the Petition and Brewer's other papers with leniency.  *Hall v. Bellmon*, 935
F.2d 1106, 1110 (10th Cir. 1991).

1

asserts that Brewer did not comply with 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations and urges the Court to dismiss the Petition as untimely.  Brewer opposes the Motion to Dismiss.

Having considered the Motion to Dismiss and Brief in Support, Brewer's Response to the Motion to Dismiss [ECF No. 10],  the record of state court proceedings [ECF No. 1, appendix; ECF No. 8, attachments], and applicable law, the Court finds and concludes that the Petition is not a second or successive petition and that the Petition is timely.  The Court therefore DENIES the Motion to Dismiss.  The Court further finds that no additional briefing is necessary as to the merits of the Fourteenth Amendment due process claim Brewer asserts in the Petition and concludes that Brewer has not shown that federal habeas relief is warranted as to that claim.  The Court therefore DENIES the Petition.

## I. Background

A jury found Brewer guilty, in Tulsa County District Court Case No. CF-1999-0426, of first-degree murder and shooting with intent to kill, both after former conviction of a felony.  ECF No. 8-1, at 1.[2]  The jury recommended sentences of life imprisonment without the possibility of parole and one hundred years' imprisonment, and the trial court sentenced Brewer

---

[2] For consistency, the Court's citations refer to the CM/ECF header pagination.

accordingly.  *Id.*  Brewer appealed, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed his judgment in July 2001.  *Id.* at 14. Nothing in the record suggests that Brewer petitioned the United States Supreme Court ("Supreme Court") for a writ of certiorari.  Brewer's judgment thus became final in October 2001.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (discussing when a state court judgment becomes final for a state prisoner seeking federal habeas relief under § 2254); *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 687 n.1 (Okla. Crim. App. 2021) ("*Wallace*") (noting that a conviction is final "where judgment was rendered, the availability of appeal exhausted, and the time to petition for certiorari had elapsed" (citing *Teague v. Lane*, 489 U.S. 288, 295 (1989))).

In July 2002, Brewer petitioned this court for a writ of habeas corpus, seeking relief under 28 U.S.C. § 2254 ("2002 Petition").  Brewer raised several claims challenging his custody under the judgment entered against him in Tulsa County District Court Case No. CF-1999-0426.  ECF No. 1-1, at 208-18.  This court denied the 2002 Petition, and the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") denied Brewer's request for a certificate of appealability and dismissed his appeal.  ECF No. 1, at 8; ECF No. 1-1, at 220-32, 234-40; *see Brewer v. Mullin*, N.D. Okla. Case No. 02-CV-0545-CVE-PJC; *Brewer v. N. Dist. of Okla. Mike Mullin*, 169 F. App'x 517 (10th Cir. Feb. 27, 2006).

3

Brewer then sought postconviction relief in state court.  Relevant to the

claim raised in the Petition, Brewer applied for postconviction relief in March

2018, raising three claims, one of which asserted that "[t]he State of

Oklahoma lacked jurisdiction to prosecute because the Major Crimes Act

gives the federal government exclusive jurisdiction to prosecute murders

committed by Indians in Indian country."  ECF No. 8-18, at 4 (full

capitalization omitted).[3]  In support of this claim, Brewer alleged that he was

Indian[4] and a member of the Cherokee Nation and that he committed his

crimes of conviction within the boundaries of the Muscogee Creek Nation

Reservation which the Tenth Circuit had then-recently determined is Indian

country, as defined by 18 U.S.C. § 1151, for purposes of the MCA.  *Id.* at 5-16

(citing, in part, *Murphy v. Royal*, 866 F.3d 1164, 1205 (10th Cir. Aug. 8,

---

[3] In relevant part, the Major Crimes Act ("MCA"), 18 U.S.C. § 1153,
provides that "[a]ny Indian who commits against the person or property of
another Indian" certain enumerated offenses, including murder, "shall be
subject to the same law and penalties as all other persons committing any of
the [enumerated] offenses, within the exclusive jurisdiction of the United
States."  18 U.S.C. § 1153(a).

[4] Because "[t]he term 'Indian' is 'not defined in [18 U.S.C. § 1152] or in
related statutes addressing criminal jurisdiction in Indian Country,'" the
Tenth Circuit "ha[s] adopted a two-part evidentiary test to determine
whether a person is an Indian for the purposes of federal law."  *United States
v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012) (first alteration in original)
(quoting *United States v. Prentiss*, 273 F.3d 1277, 1279 (10th Cir. 2001)).
Under this test, a factfinder must determine whether the person (1) has
"some Indian blood" and (2) is "recognized as an Indian by a tribe or by the
federal government."  *Prentiss*, 273 F.3d at 1280.

2017), *amended and superseded on denial of reh'g en banc* 875 F.3d 896 (10th Cir. Nov. 9, 2017)).  The state district court denied Brewer's application, concluding that two claims were procedurally barred and that his claim challenging the State's exercise of criminal jurisdiction in Indian country was "premature" because the Tenth Circuit's decision in *Murphy* was pending review in the Supreme Court.  ECF No. 8-19, at 4-6.  Brewer appealed, and the OCCA affirmed the denial of postconviction relief in February 2019.  ECF No. 8-20.

Over one year later, the Supreme Court held that Congress never disestablished the Muscogee Creek Nation Reservation and clarified that "the MCA applies to Oklahoma according to its usual terms:  Only the federal government, not the State, may prosecute Indians for major crimes committed in Indian country."  *McGirt v. Oklahoma*, 591 U.S. 894, 932-33 (2020).  Citing *McGirt*, the Supreme Court affirmed the Tenth Circuit's decision in *Murphy*.  *Sharp v. Murphy*, 591 U.S. 977 (2020).  Brewer promptly refiled the application for postconviction relief that the state district court denied in 2018.  ECF No. 8-21.  Through counsel, Brewer amended his application, raising only the Indian country jurisdiction claim.  ECF No. 1-1, at 33-41.  In the wake of *McGirt*, the OCCA issued several decisions wherein it (1) concluded that other reservations in Oklahoma have not been disestablished, and (2) held that state law permitted defendants to raise

5

Indian country jurisdiction claims in applications for postconviction relief even if the defendants' convictions were final before *McGirt* was decided. *Wallace*, 497 P.3d at 689 & n.3.

In an order signed May 17, 2021, and filed May 25, 2021, the state district court granted Brewer's application for postconviction relief, over the State's objections, vacated his criminal judgment, and dismissed his criminal case for lack of jurisdiction.  ECF No. 1-1, at 43-45; *see also id.* at 47-50 (Vacated Judgment and Sentence, dated May 25, 2021).  The state district court determined, based on stipulated facts, that Brewer was Indian and that he committed his crimes in Indian country; determined that the State's jurisdiction was preempted by the MCA; and, relying on *Wackerly v. State*, 2010 OK CR 16, and *Bosse v. State*, 2021 OK CR 3, determined that "issues of subject matter jurisdiction are never waived."  *Id.* at 43-44; ECF No. 8-23 (evidentiary hearing stipulations).  The State did not seek a stay or file a

postconviction appeal to challenge the order granting postconviction relief, vacating his judgment, and dismissing his case.  ECF No. 1-1, at 73.[5]

Two days after the state district court orally announced that it would grant postconviction relief and dismiss Brewer's criminal case, the federal government filed an indictment in this court charging Brewer, under the MCA, with first-degree murder in Indian country.  *Id.* at 244; *see* N.D. Okla. Case No. 21-CR-227-JFH.  Brewer was transferred from state custody to federal custody on or before May 26, 2021.  ECF No. 1, at 1, 5; *see also* ECF No. 10, N.D. Okla. Case No. 21-CR-227-JFH.

---

[5] Under Oklahoma law, the State had ten days from May 25, 2021, to seek a stay of the state district court's order granting postconviction relief, twenty days to file a notice of appeal, and either thirty or sixty days to perfect a postconviction appeal in the OCCA. *See* Okla. Stat. tit. 22, § 1084 (providing that state district court's written order granting or denying postconviction relief "is a final judgment"); Okla. Stat. tit. 22, § 1087 (providing that "[a] final judgment" in a postconviction proceeding "may be appealed to the Court of Criminal Appeals on petition in error filed either by the applicant or the state within thirty (30) days from the entry of the judgment" and further providing that, "[u]pon motion of either party on filing of notice of intent to appeal, within ten (10) days of entering the judgment, the district court may stay the execution of the judgment pending disposition on appeal"); *Weatherford v. State*, 13 P.3d 987, 987-89 (Okla. Crim. App. 2000) (discussing § 1087 and explaining that "if a party desires to invoke the appellate jurisdiction of this Court over post-conviction proceedings, he must do so within the time mandated by the Legislature."); Rule 5.2(C)(1), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2021) (requiring party to file notice of appeal within twenty days from the date the order granting or denying postconviction relief is filed, providing that "[t]he filing of the Notice of Post-Conviction Appeal in the District Court is jurisdictional and failure to timely file constitutes waiver of the right to appeal," and providing sixty (60) days to perfect the appeal).

In August 2021, while Brewer's federal prosecution was pending, the OCCA held in *Wallace* "that *McGirt* and [the OCCA's] post-*McGirt* decisions recognizing [that several reservations had not been disestablished] shall not apply retroactively to void a conviction that was final when *McGirt* was decided" and that "[a]ny statements, holdings, or suggestions to the contrary in [the OCCA's] previous cases are hereby overruled." *Wallace*, 497 P.3d at 689.

One month later, relying on *Wallace*, the State moved the state district court to vacate the May 2021 order that granted Brewer's application for postconviction relief. ECF No. 1-1, at 52-61. At a hearing held November 4, 2021, the state district court orally granted the State's motion, over Brewer's objections, and stayed its ruling pending an appeal by Brewer. *Id.* at 63, 69, 200. In a written order, signed and filed January 21, 2022, the state district court acknowledged that "the State missed normal procedural time limits for appeal," but the state district court relied on *Wallace* to conclude that its May 2021 order "was unauthorized by state law and [is] void." *Id.* at 65-66 (hereafter, "Order of Vacatur"). The state district court thus vacated and set

aside its May 2021 order but reiterated that the Order of Vacatur would be stayed pending the outcome of Brewer's appeal.  *Id.* at 66.[6]

On January 24, 2022, Brewer filed in the OCCA an Application to Assume Original Jurisdiction and Petition for Writ of Prohibition or in the Alternative for Writ of Mandamus ("Writ Application"), challenging the validity of the Order of Vacatur.  ECF No. 8-25.[7]  Brewer asserted four claims:  (1) the Order of Vacatur was contrary to state law because the order granting postconviction relief became final when the State did not appeal; (2) the state district court erroneously ruled that the May 2021 order granting postconviction relief was void; (3) the state district court violated the Ex Post Facto Clause by applying *Wallace* to vacate the pre-*Wallace* order granting postconviction relief; and (4) the Order of Vacatur violated his Fourteenth Amendment right to due process because it arbitrarily deprived him of a

_____

[6] Citing the state district court's oral ruling from November 2021, granting the State's motion to vacate the May 2021 order, the federal government moved to dismiss Brewer's federal case.  ECF No. 27, N.D. Okla. Case No. 21-CR-227-JFH.  This court granted that motion on January 6, 2022, and dismissed the case without prejudice.  ECF No. 28, N.D. Okla. Case No. 21-CR-227-JFH.

[7] In support of his Writ Application, Brewer alleged he had "no legal remedy other than a writ of prohibition because his case was vacated" and the Order of Vacatur, allegedly entered "without authority . . . would not trigger an appeal."  ECF No. 8-26, at 7.

liberty interest he had obtained through the order granting postconviction relief.  ECF No. 8-26.

The OCCA denied Brewer's Writ Application on April 28, 2023, in OCCA Case No. PR-2022-85.  ECF No. 1-1, at 77-101.  Applying state decisional law, including *Wallace*, the OCCA reasoned that the state district court retained jurisdiction to issue the Order of Vacatur because Brewer's conviction was final before *McGirt*, the grant of postconviction relief and dismissal of Brewer's case was "unauthorized under Oklahoma law," and Oklahoma law permits "prompt correction" of an "erroneous judicial release . . . of a prisoner" "even when the unauthorized dismissal occurs in the context of an order granting post-conviction relief which is not timely appealed by the State."  *Id.* at 79-80.  The OCCA further reasoned that the Order of Vacatur was necessary to correct the unauthorized dismissal of Brewer's case "given the misdirection [the OCCA's] original decision in *Bosse* gave to both the District Court and the parties."  *Id.* at 80.  The OCCA thus concluded that Brewer "fail[ed] to show the District Court's reinstatement of his convictions constituted an exercise of judicial power that is unauthorized by law" and denied his Writ Application.  *Id.*

Brewer filed the instant Petition on November 8, 2023, seeking federal habeas relief from what he claims is his unlawful detention in state custody.

## II. Discussion

A federal court "shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Brewer identifies one claim.  Relying primarily on *Hicks v. Oklahoma*, 447 U.S. 343 (1980), Brewer claims that he is in custody in violation of his Fourteenth Amendment right to due process because the "OCCA's manipulation of state law statutes and rules deprived [him] of [his] liberty interest as provided by the Fourteenth Amendment."  ECF No. 1, at 12-13.  Brewer contends he had a "substantial and legitimate expectation" that the state district court order granting postconviction relief and dismissing his state case was final when the State did not appeal.  *Id.*  He further contends "it was a substantive due process violation for OCCA to allow the State an unlawful remedy" when the State did not follow state procedural rules for filing a postconviction appeal to challenge the order granting him postconviction relief because he had a "liberty interest protected by a clear, specific and exclusive method under Oklahoma law for the State to seek relief from the district court's order freeing [him]."  *Id.* at 19-20; *see also* ECF No. 10 (stating, "[a]t issue is the State's reassertion of jurisdiction in brazen defiance of rules of finality of judgment and principles of due process associated with the same").

11

As the Court understands it, Brewer asserts the same due process claim that he presented to the OCCA through his Writ Application—namely, that the State violated his Fourteenth Amendment right to due process by arbitrarily depriving him of a liberty interest that he obtained when the state district court's May 2021 order granting postconviction relief became final after the State failed to appeal in accordance with state law. With this understanding of the Fourteenth Amendment due process claim asserted in the Petition, the Court turns to Respondent's Motion to Dismiss.

## A. Motion to Dismiss

Respondent moves to dismiss the Petition, asserting that Brewer did not comply with 28 U.S.C. § 2244(b)'s procedural requirements before filing a second or successive habeas petition and, alternatively, that Brewer did not comply with 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations. ECF Nos. 7, 8. Brewer opposes the Motion to Dismiss, arguing that the Petition is not second or successive because it presents a Fourteenth Amendment claim that "was not ripe for review" when he filed the 2002 Petition. ECF No. 1, at 6; ECF No. 10, at 4-5. He also argues that his claim is timely under § 2244(d)(1)(D). ECF No. 10, at 5-6.

### 1. Second or successive petition

"A state prisoner is entitled to one fair opportunity to seek federal habeas relief from his conviction. But he may not usually make a 'second or

successive habeas corpus application.'  28 U.S.C. § 2244(b)."  *Banister v. Davis*, 590 U.S. 504, 507 (2020); *see also Panetti v. Quarterman*, 551 U.S. 930, 947 (2007) ("In the usual case, a petition filed second in time and not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar.").[8]  Section 2244(b) provides, in relevant part,

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
>   (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>   (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
>     (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> (3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the

---

[8] Before Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "whether to entertain a successive habeas petition was left to 'the sound discretion of the federal trial judges.'" *Banister*, 590 U.S. at 532 (Alito, J., dissenting) (quoting *Sanders v. United States*, 373 U.S. 1, 18 (1963).  After AEDPA, the discretion to entertain second or successive habeas petitions is governed by § 2244(b) and the Supreme Court's decisions interpreting this statute.

appropriate court of appeals for an order authorizing the district
court to consider the application.

28 U.S.C. § 2244(b).  "The court of appeals may authorize the filing of a

second or successive application only if it determines that the application

makes a prima facie showing that the application satisfies the requirements

of [§ 2244(b)(2)]."  28 U.S.C. § 2244(b)(3)(C).  If a state prisoner does not

obtain permission from the court of appeals before filing a second or

successive habeas petition, the district court lacks jurisdiction to adjudicate

the petition and must either dismiss the petition or transfer the petition to

the court of appeals for authorization.  *In re Cline*, 531 F.3d 1249, 1251-52

(10th Cir. 2008) (*per curiam*).

Respondent contends, in part, that Brewer's Fourteenth Amendment due

process claim, while not presented in the 2002 Petition, is not the type of new

claim contemplated in § 2244(b)(2) that may be raised in a second or

successive petition.  ECF No. 8, at 22-23.  The record supports that the

Petition is Brewer's second-in-time habeas petition, that he did not obtain the

requisite authorization before filing the Petition, and that his new claim does

not fall within either exception identified in § 2244(b)(2).[9]   Considering the

plain language of § 2244(b), Respondent's request to dismiss the Petition is

compelling.

But § 2244(b)'s procedural requirements only apply to habeas petitions

that are "second or successive," and the Supreme Court "has declined to

interpret 'second or successive' as referring to all § 2254 applications filed

second or successively in time, even when the later filings address a state-

court judgment already challenged in a prior § 2254 application." *Panetti*,

551 U.S. at 944; *see also Magwood v. Patterson*, 561 U.S. 320, 335 n.11 (2010)

("This case does not require us to determine whether § 2244(b) applies to

every application filed by a prisoner in custody pursuant to a state-court

judgment if the prisoner challenged the same state-court judgment once

before."). *But see Burton v. Stewart*, 549 U.S. 147, 153, 156 (2007)

(concluding second-in-time habeas petition was "second or successive" under §

2244(b) because state prisoner "twice brought claims contesting the same

_____

[9] Brewer did seek permission from the Tenth Circuit after he filed the
Petition, and the Tenth Circuit denied his motion for authorization.  ECF No.
11.  In doing so, the Tenth Circuit reasoned that Brewer failed to make a
prima facie showing that his new Fourteenth Amendment due process claim
satisfies the requirements set forth in § 2244(b)(2).  *Id.* at 4-5.  The Tenth
Circuit declined, however, to consider Brewer's alternative argument that the
Petition is not second or successive petition and thus is not subject to §
2244(b)'s procedural requirements.  *See id.* at 5 (leaving it to the district court
to decide in the first instance whether the Petition is a second or successive
habeas petition).

custody imposed by the same judgment of a state court" through a 1998

petition and a 2002 petition, and "there was no new judgment intervening

between the two habeas petitions").

Instead, the Supreme Court has teased out the meaning of the phrase

"second or successive" largely by identifying petitions that are not second or

successive.  For example, the Supreme Court "determined that a habeas

petition filed after an initial petition was dismissed" for failure to exhaust

available state remedies "without an adjudication on the merits is not a

'second or successive' petition." *Slack v. McDaniel*, 529 U.S. 473, 489 (2000).

And *Banister* held that a motion under Federal Rule of Civil Procedure 59(e)

to alter or amend a judgment entered in a habeas proceeding is not a

successive petition; it "is instead part and parcel of the first habeas

proceeding." *Banister*, 590 U.S. at 507.  In the death penalty context, the

Supreme Court has held that a second or subsequent habeas petition

asserting a *Ford* claim[10] is not second or successive:  (1) if the *Ford* claim

previously was presented in a first habeas petition and that claim was

dismissed as unripe or "premature," *Stewart v. Martinez-Villareal*, 523 U.S.

---

[10] A *Ford* claim is a claim asserted under *Ford v. Wainwright*, 477 U.S. 399 (1986), alleging that a prisoner who was found competent to be tried, convicted, and sentenced to death should not be executed because his present mental condition has deteriorated to the point of rendering him incompetent and therefore ineligible to be executed.  *Panetti*, 551 U.S. at 935.

16

637, 643 (1998); or (2) if the *Ford* claim is presented for the first time in a second or subsequent habeas petition filed after the *Ford* claim first becomes ripe, *Panetti*, 551 U.S. at 947.   And *Magwood* explains that when a second or subsequent habeas petition "challenges a new judgment for the first time, it is not 'second or successive' under § 2244(b)."  *Magwood*, 561 U.S. at 324; *see also Burton*, 549 U.S. at 155-56 (rejecting petitioner's argument "that his 1998 and 2002 petitions challenged different judgments" because petitioner was in state custody pursuant to the same 1998 judgment when he filed each petition and "there was no new judgment intervening between the two habeas petitions").

### a. There is no "new judgment" under *Magwood*.

Relying on *Magwood*, Respondent contends that the Petition is second or successive because the Petition challenges Brewer's custody under the same judgment that he challenged through his 2002 Petition, not a new judgment. ECF No. 8 at 14-18.  Brewer counters that "Respondent's attempt to fit Petitioner's case within the holding of *Magwood* . . . and a lack of a 'new judgment' ignores a basic fact included in the [Petition]" because, in Brewer's view, the state district court "issued a new judgment in dismissing the case." ECF No. 10, at 4.

On this point, Respondent has the better argument.  The specific question presented in *Magwood* was "whether [the petitioner's second habeas]

17

application challenging his 1986 death sentence, imposed as part of resentencing in response to a conditional writ from [the federal habeas court that adjudicated the petitioner's first habeas application], is subject to the constraints that § 2244(b) imposes on the review of 'second or successive' habeas applications." *Magwood*, 561 U.S. at 330.  *Magwood* held that "the phrase 'second or successive' must be interpreted with respect to the judgment challenged." *Id.* at 333.  The *Magwood* Court agreed with the petitioner in that case who argued that "his 1986 resentencing led to a new judgment, and his first application challenging that new judgment" was not a second or successive petition subject to § 2244(b)'s procedural requirements. *Id.* at 331.  The *Magwood* Court reasoned that the second-in-time habeas petition, filed after a full resentencing hearing and imposition of a new sentence was not second or successive because, "where . . . there is a 'new judgment intervening between the two habeas petitions,' . . . an application challenging the resulting new judgment is not 'second or successive' at all." *Magwood*, 561 U.S. at 341-42 (quoting *Burton*, 549 U.S. at 156); *see also id.* at 338 (explaining that "the existence of a new judgment is dispositive" on the issue of whether a second or successive § 2254 petition is "second or successive" under § 2244(b)).  However, while *Magwood* explained that a state court resentencing proceeding that occurred after a state prisoner obtained federal habeas relief results in a new judgment, *Magwood* offers

18

little guidance as to what, if any, other proceedings might result in a new judgment. *See id.* at 331, 339 (reasoning, in part, that it was "especially clear" that the petitioner in *Magwood* was challenging a new judgment because "the state court conducted a full resentencing and reviewed the aggravating evidence afresh" before resentencing the petitioner to death); *see also United States v. Quary*, 881 F.3d 820, 823 (10th Cir. 2018) (noting that *Magwood* does not define the term "new judgment" and finding persuasive decisions from other circuits holding that a reduction in sentence under 18 U.S.C. § 3582(c)(2) does not result in a new judgment). Nonetheless, the consensus among the circuit courts is that there must be some substantive change to the conviction or sentence for there to be a "new judgment." *See* Patrick Cothern, *What Is "New"?: Defining "New Judgment" After Magwood*, 117 Mich. L. Rev. 1669, 1677, nn.70, 71 (2019).

Here, there was no substantive change to Brewer's convictions or sentences. Rather, as Respondent contends "[t]here has been no 'new judgment' that has intervened between [Brewer's] first habeas petition in 2002 and his present petition filed in November 2023: while [Brewer's] judgment had been vacated for a brief time in 2021, the judgment itself has remained unchanged and no new judgment has ever been entered." ECF No. 8, at 15. In other words, the state district court neither resentenced Brewer nor entered a new or amended judgment after it vacated and set aside its

19

May 2021 order granting him postconviction relief.  The record instead shows
that the state district court (1) vacated Brewer's original judgment in May
2021 and filed a Vacated Order and Judgment on May 25, 2021; and (2) filed
the Order of Vacatur in January 2022, ordering that the "order granting [his]
application for postconviction relief and the May 25, 2021 vacation of his
Judgment and Sentence are hereby VACATED and SET ASIDE."  ECF No. 1-
1, at 47, 65-66.

In sum, the Order of Vacatur reinstated Brewer's original judgment as if it
had never been vacated.  And, under the facts of this case, there was no
resentencing proceeding, no new assessment of the evidence, and no
substantive change to Brewer's convictions or sentences.  Thus, Brewer
presently is in state custody pursuant to his original judgment and that is the
same judgment he challenged through the 2002 Petition.  And there is no
intervening new judgment filed between the 2002 Petition and the instant
Petition that would permit him to avoid the second or successive bar.  The
Court thus agrees with Respondent that the Petition does not challenge a
new judgment.

### b. Brewer presents an "unripe" claim under *Panetti*.

Nevertheless, Brewer persuasively argues that he does not need a new
judgment to show that the Petition is not a second or successive habeas
petition.  Relying on *Panetti* and *In re Weathersby*, 717 F.3d 1108 (10th Cir.

20

2013), Brewer asserts that his Petition is not second or successive because his Fourteenth Amendment claim "is limited to the undoing of his final order of dismissal and was not ripe for review" when he filed the 2002 Petition.  ECF No. 1, at 6; *see also* ECF No. 10, at 3-4 (arguing that *Panetti*, not *Magwood*, applies to the facts of his case).

As previously stated, the Supreme Court has held, in the death penalty context, that a second or subsequent habeas petition asserting a *Ford* claim is not second or successive:  (1) if the *Ford* claim previously was presented in a first habeas petition and that claim was dismissed as unripe or "premature," *Stewart*, 523 U.S. at 643; or (2) if the *Ford* claim is presented for the first time in a second or subsequent habeas petition filed after the *Ford* claim first becomes ripe, *Panetti*, 551 U.S. at 947.   In *Weathersby*, the Tenth Circuit applied *Panetti* and *Stewart* to consider whether a federal prisoner's successive motion to vacate, set aside or correct sentence, filed under 28 U.S.C. § 2255, was a second or successive motion subject to § 2255(h)'s gate-keeping requirements.[11]   *Weathersby*, 717 F.3d at 1109-11.  The movant in

_____

[11] Section 2255 provides a postconviction remedy for federal prisoners to collaterally attack their sentences after the conclusion of direct review. *See Jones v. Hendrix*, 599 U.S. 465, 469 (2023).  Like § 2254 petitions filed by state prisoners, § 2255 motions filed by federal prisoners are subject to the AEDPA's bar against "second or successive" motions, and the gate-keeping provisions that apply to each type of remedy are substantially the same.  *Id.* at 469, 476; *Weathersby*, 717 F.3d at 1110; *compare* 28 U.S.C. § 2244(b), *with* 28 U.S.C. § 2255(h).

*Weathersby* sought to reopen his federal sentence, alleging that he should be resentenced because several of his state convictions that had been used to enhance his federal sentence were vacated.  *Id.* at 1109-10.  The Tenth Circuit had previously held that "[i]f a defendant successfully attacks state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences."  *Id.* (quoting *United States v. Cox*, 83 F.3d 336, 339 (10th Cir. 1996)); *see also Johnson v. United States*, 544 U.S. 295, 303 (2005) (reiterating "that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated").  The *Weathersby* court described *Panetti* as concluding "that a claim that was not ripe at the time the state prisoner filed his first federal habeas petition would not be considered 'second or successive' under § 2244(b) if the petitioner asserted the claim in a later habeas petition once it became ripe." *Weathersby*, 717 F.3d at 1110; *see also id.* (noting that *Magwood* described *Panetti* as having 'created an exception to § 2244(b) for a second application raising a claim that would have been unripe had the petitioner presented it in his first application'" (alterations omitted) (quoting *Magwood*, 561 U.S. at 332)); *Magwood*, 561 U.S. at 343 (Breyer, J., concurring in part, and concurring in judgment) (noting that the *Magwood* Court "neither purports to alter nor does alter [the] holding in *Panetti*," and that "if [the petitioner] were challenging an undisturbed state-court judgment for the second time, abuse-

22

of-the-writ principles would apply, including *Panetti*'s holding that an
'application' containing a 'claim' that 'the petitioner had no fair opportunity
to raise' in his first habeas petition is not a 'second or successive'
application").

Relying on *Johnson*, the *Weathersby* court explained that "relief under §
2255 is not available until the state conviction used to enhance the federal
sentence is vacated" and that "[i]t is the fact of the state court vacatur that
gives rise to the federal claim." *Weathersby*, 717 F.3d at 1110. Citing the
reasoning in *Stewart, Leal Garcia v. Quarterman*, 573 F.3d 214 (5th Cir.
2009), and *In re Jones*, 652 F.3d 603 (6th Cir. 2010), the Tenth Circuit
concluded "that if, as [the movant] represents, the state court did not vacate
his convictions until after his first § 2255 proceedings were concluded, so the
basis for his proposed § 2255 claim did not exist when those proceedings were
ongoing, his claim to reopen his federal sentence based on the state court's
vacatur is not 'second or successive' and does not require our prior
authorization." *Weathersby*, 717 F.3d at 1111.

Brewer asks this Court to apply the same reasoning here, arguing that the
Fourteenth Amendment due process claim he presents in the Petition did not
exist when he filed the 2002 Petition. ECF No. 1, at 6. Respondent opposes
that request, asserting that *Panetti* and *Weathersby* should not be broadly
applied to the specific facts of this case as this case involves neither a state

23

prisoner's *Ford*-based competency claim nor a federal prisoner's *Johnson*-based enhanced sentence claim.  ECF No. 8, at 18-21.[12]  Respondent also suggests that the Tenth Circuit itself has described *Weathersby* "as outlining 'a narrow exception to the bar on successive § 2255 motions for circumstances where a particular claim cannot be raised in an initial § 2255 motion.'"  ECF No. 8, at 21 (quoting *United States v. Williams*, 790 F.3d 1059, 1068 (10th Cir. 2015)).

Under the unique circumstances of this case, the Court concludes that the exception for unripe claims that was recognized in *Panetti* and applied more broadly in *Weathersby* also applies here, notwithstanding *Williams*'s

_____

[12] Respondent also argues that unlike the petitioner in *Panetti* and the movant in *Weathersby*, Brewer has not identified a "cognizable federal claim with an accrual event" that would permit him to bring the Fourteenth Amendment claim in a second or subsequent petition.  ECF No. 8, at 21.  More specifically, Respondent argues that the Fourteenth Amendment claim is not a cognizable habeas claim because it "is a broad due process challenge to how the state courts applied state procedural rules in his case during state postconviction relief proceedings. *Id.* (citing *Sellers v. Ward*, 135 F.3d 1333 (10th Cir. 1998)).  The Tenth Circuit recently rejected this argument when presented with a Fourteenth Amendment due process claim arising from nearly identical facts as those presented here. *Graham v. White*, 101 F.4th 1199, 1204-05 (10th Cir. 2024).  Like the petitioner in *Graham*, Brewer alleges a cognizable habeas claim because he is "complaining about the reinstatement of [his] convictions through the state district court's grant of post-conviction relief to the State," not asserting a "challenge to post-conviction procedures." *Id.* at 1205.  Brewer's claim that the State deprived him of a liberty interest by effectively reinstating his previously vacated judgment implicates his Fourteenth Amendment right to due process.  The Court thus rejects Respondent's argument that Brewer fails to state a cognizable habeas claim.

description of *Weathersby* as providing a "narrow exception" that Respondent appears to read as extending only to § 2255 motions.  Brewer's Fourteenth Amendment due process claim rests on what he alleges is a constitutional violation that occurred in a state postconviction proceeding held almost two decades after he filed the 2002 Petition.  Clearly, the facts underlying Brewer's claim—i.e., the fact that the state district court entered an Order of Vacatur in 2022 reinstating his judgment that was vacated in 2021—did not exist before the conclusion of the habeas proceeding prompted by the 2002 Petition.  *See Williams*, 790 F.3d at 1068-69 (distinguishing between a case "where the factual basis for a claim does not yet exist" and a case "where [the factual basis for a claim] has simply not yet been discovered" and noting that *Weathersby*'s exception applies to the former); *Weathersby*, 717 F.3d at 1110 (explaining that when "[i]t is the fact of the state court vacatur that gives rise to the federal claim" and "the state court did not vacate [the movant's] convictions until after his first § 2255 proceedings were concluded," the § 2255 motion asserting the previously nonexistent claim is not second or successive); *Jones*, 652 F.3d at 605 (holding § 2254 claim that was not ripe when first petition was filed, because it was based on events that had not yet occurred, was not a "second or successive" claim subject to § 2244(b)(3)(A)'s preauthorization requirement); *Leal Garcia*, 573 F.3d at 222 (reasoning that when "the purported defect did not arise, or the claim did not ripen, until

25

after the conclusion of the previous [§ 2254] petition, the later petition based on that defect may be non-successive").

Because the facts underlying Brewer's Fourteenth Amendment due process claim did not exist until well after the conclusion of the habeas proceeding prompted by the 2002 Petition, the instant Petition asserting that claim is not second or successive.

### 2. Timeliness

Respondent alternatively argues that the Petition should be dismissed as barred by § 2244(d)(1)'s one-year statute of limitations.  ECF No. 8, at 23-25. Under the AEDPA, state prisoners have one year from the latest of four triggering events in which to file a federal habeas petition.  28 U.S.C. § 2244(d)(1).  These events include:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; [and]
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The one-year period generally runs from the date the judgment became "final" under § 2244(d)(1)(A), unless a petitioner alleges facts that implicate § 2244(d)(1)(B), (C), or (D).  *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000).  But different claims raised in the same petition may implicate different triggering events.  *See Prendergast v. Clements*, 699 F.3d 1182, 1187 (10th Cir. 2012) (explaining that "§ 2244(d)(1) should be applied on a claim-by-claim basis"); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) ("[Section] 2244(d)(1) provides that a '1–year period of limitation shall apply to an application for a writ of habeas corpus.' (Emphasis added.)  The subsection then provides one means of calculating the limitation with regard to the 'application' as a whole, § 2244(d)(1)(A) (date of final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate).").

   Respondent contends the Petition is untimely under § 2244(d)(1)(A) because Brewer's original judgment became final in 2001 and there are no tolling events under § 2244(d)(2) that would render the Petition timely.  ECF No. 8, at 24; *see* 28 U.S.C. § 2244(d)(2) (providing that the AEDPA limitations period is tolled during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim"). Respondent further contends that, to the extent the

27

Petition could be read as asserting timeliness under § 2244(d)(1)(D), the Petition is untimely because "[a] factual predicate arising from PCR proceedings, which itself does not state a cognizable federal claim, will not support application of a subparagraph (D) triggering date." ECF No. 8, at 25.

The Court agrees that the Petition is not timely under § 2244(d)(1)(A). Brewer's judgment became final in October 2001, his AEDPA deadline under § 2244(d)(1)(A) expired in October 2002, and the record does not support that statutory tolling or equitable tolling could render the Petition, filed in 2023, timely.

The Court nonetheless agrees with Brewer that the Fourteenth Amendment due process claim is timely under § 2244(d)(1)(D). As previously stated, that subsection provides a one-year limitations period that begins on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Here, the earliest date a reasonably diligent petitioner could have discovered the factual predicate for the Fourteenth Amendment due process claim was November 4, 2021, when the state district court announced in open court that it would grant the State's motion to vacate the May 2021 order granting postconviction relief to Brewer. *Cf. Johnson*, 544 U.S. at 308-11 (holding, in case wherein federal prisoner sought to reopen federal sentence based on vacatur of state conviction used to enhance federal sentence, that § 2255's

statute of limitations runs from the date defendant received notice of vacatur, but only if defendant diligently pursued vacatur of state conviction following entry of federal judgment).  Respondent acknowledges that the facts underlying the Fourteenth Amendment due process claim could not have been discovered until November 4, 2021.  ECF No. 8, at 24-25.  But Respondent objects to applying § 2244(d)(1)(D) based on Respondent's view that Brewer's Fourteenth Amendment due process claim does not present a cognizable habeas claim.  *Id.* at 25.  As previously discussed, this argument lacks merit under the circumstances of this case.  *See supra*, n.12; *Graham*, 101 F.4th at 1205 (distinguishing between federal habeas claims that challenge state postconviction procedures, based on perceived errors of state law, and federal habeas claims that assert constitutional errors arising from a state court's alleged misapplication of state law during postconviction proceedings).  The Court thus finds that, with the benefit of statutory tolling, the Fourteenth Amendment claim is timely under § 2244(d)(1)(D).[13]

---

[13] Under § 2244(d)(1)(D), the one-year limitations period began to run on November 4, 2021.  Because the state district court immediately stayed its ruling and Brewer promptly sought review in the OCCA through his Writ Application, the limitations period was tolled until April 18, 2023, when the OCCA denied the Writ Application.

### 3. Conclusion

Based on the foregoing analysis, the Court concludes that the Petition is not a second or successive petition subject to 28 U.S.C. § 2244(b)'s procedural requirements and that the Fourteenth Amendment due process claim asserted in the Petition is timely under 28 U.S.C. § 2244(d)(1)(D).  The Court therefore DENIES the Motion to Dismiss.

### B. Petition

Having denied Respondent's Motion to Dismiss, the Court finds that further briefing on the merits of Brewer's Fourteenth Amendment due process claim is unnecessary.  *See* 28 U.S.C. § 2243 (providing that habeas court shall "dispose of the matter as law and justice require").  The Court will therefore proceed to the merits of that claim.

As previously discussed, the Court understands the Fourteenth Amendment due process claim in the Petition as reasserting the same claim Brewer presented to the OCCA through his Writ Application—namely, that the State violated his Fourteenth Amendment right to due process by arbitrarily depriving him of a liberty interest that he obtained when the state district court's May 2021 order granting postconviction relief became final after the State did not appeal.  ECF No. 1, generally; *see* ECF No. 8-26, at 15-16 (citing *Hicks* and asserting that the "Order of Vacatur directly attacks the liberty interest of" Brewer and resulted in "an arbitrary deprivation by the

State of a Fourteenth Amendment Right in violation of Due Process" because the State waived its right to appeal the order granting postconviction relief).

The OCCA ostensibly rejected this claim, reasoning, in part, that no due process violation occurred because state law provided the state district court authority to vacate its order granting postconviction relief despite the State's failure to timely appeal.  The OCCA stated:

> Because the convictions in this matter were final before the July 9, 2020, decision in *McGirt*, the holding in *McGirt* does not apply and the District Court's order vacating the convictions was unauthorized by law.  *See [Wallace]*, 2021 OK CR 21, ¶ 40, 497 P.3d at 694.  "The effect of the District Court's order was to discharge an offender who was under lawful [judgment and] sentence." *Application of Anderson*, 1990 OK CR 82, ¶ 5, 803 P.2d 1160, 1163.  The erroneous judicial release by the District Court of a prisoner is subject to prompt correction by the court.  *See Harris v. District Court of Oklahoma County*, 1988 OK CR 26, ¶ 4, 750 P.2d 1129, 1130-31.  This is so even when the unauthorized dismissal occurs in the context of an order granting post-conviction relief which is not timely appealed by the State.  *See Anderson*, 1990 OK. CR 82, ¶¶ 3, 5, 803 P.2d at 1162, 1163.  That is particularly so here given the misdirection our original decision in *Bosse* gave to both the District Court and the parties.
>
> Because dismissal of Petitioner's judgment and sentence was unauthorized under Oklahoma law, the District Court retained jurisdiction to vacate or modify its previous order granting postconviction relief.  *See Ex parte Eley*, 1913 OK CR 77, 130 P. 821, 823.  Petitioner fails to show how the District Court's reinstatement of his convictions constituted an exercise of judicial power that is unauthorized by law.

ECF No. 1-1, at 79-80.

When, as here, a state appellate court has rejected a federal claim on the merits, a petitioner must show, as a precondition to federal habeas relief, that the state appellate court "acted unreasonably in determining the facts or in applying a Supreme Court holding." *Graham*, 101 F.4th at 1207.  Even granting Brewer the benefit of liberal construction afforded to pro se litigants, he has not shown that federal habeas relief is warranted.

To support his request for habeas relief, Brewer relies heavily on this court's decision in *Graham v. White*, 678 F. Supp. 1332 (N.D. Okla. 2023).  He asserts that his "circumstances mirror the circumstances of [the petitioner in *Graham*], with the exception Petitioner was continuously held in custody, both legal federal and illegal State, as the State contemplated and then issued its illegal order."  ECF No. 1, at 1-6 & n.2.  Brewer is correct that this court, in *Graham*, granted a writ of habeas corpus to a state prisoner who, like Brewer, obtained state postconviction relief under the reasoning in *McGirt* but was later returned to state custody after the state district court granted the State's motion to vacate the order granting postconviction relief under the reasoning in *Wallace*, despite the State's failure to file a timely appeal.  *Graham*, 678 F. Supp. at 1335-45.  And, like the petitioner in *Graham*, Brewer asserts that the reinstatement of his previously vacated judgment under those circumstances deprived him of a liberty interest protected by the Fourteenth Amendment's guarantee of due process.  *Id.* at

1345-48.  But the respondent in *Graham* sought review of this court's

decision granting habeas relief, and the Tenth Circuit reversed that decision

and remanded that case to this court with directions to deny habeas relief to

that petitioner.  *Graham*, 101 F.4th at 1202, 1210.  The Tenth Circuit

reasoned:

> The resulting constitutional issue is whether the state appeals
> court acted arbitrarily under Oklahoma law in allowing the state
> district court to modify the initial order after the State's appeal
> time had expired.  [The petitioner] suggests this application of
> state law was arbitrary.  The [OCCA] might or might not have been
> right in upholding the state district court's power to reinstate the
> convictions.  But at least some fair-minded jurists could reasonably
> credit the state appeals court's application of *Harris* and
> *Application of Anderson*.  So the state appeals court had leeway to
> reject [the petitioner's] characterization of its approach as
> *arbitrary*.  Given that leeway, "fairminded jurists could disagree
> that the state court's decision conflicts with [the Supreme] Court's
> precedents."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Id. at 1209-10 (first three alterations added) (emphasis in original).  Just as

habeas relief was not warranted in *Graham*, habeas relief is not warranted

here because "at least some fair-minded jurists could reasonably credit" the

OCCA's application of its own decisions to conclude that the state district

court retained jurisdiction to vacate the initial order granting Brewer's

application for postconviction relief, vacating his original judgment, and

dismissing his case, despite the State's failure to timely appeal the May 2021

order.  *Id.* at 1210; *see also id.* at 1208 ("Here we're not addressing the

arbitrary deprivation of a state-law right (like the one in *Hicks*); we're

instead addressing whether the Constitution prevents a state court from applying its own law to modify an order after the appeal deadline expired. Neither the Supreme Court nor our court has ever applied *Hicks* in a similar situation.").

Based on the foregoing, the Court therefore DENIES the Petition.

## III. Conclusion

The Court concludes that the Petition is not a second or successive petition and that the Petition was filed within the applicable one-year limitations period. The Court therefore DENIES Respondent's Motion to Dismiss. Further, the Court concludes that additional briefing on the Fourteenth Amendment due process claim raised in the Petition is not necessary and that Brewer has not shown that federal habeas relief is warranted as to that claim. The Court therefore DENIES the Petition.  Finally, the Court concludes that reasonable jurists would not debate the procedural or substantive rulings and that no certificate of appealability should issue. *Slack*, 529 U.S. at 484; 28 U.S.C. § 2253(c). The Court therefore DENIES a certificate of appealability.

**IT IS ORDERED** that (1) Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus [ECF No. 7] is DENIED; (2) Brewer's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [ECF No. 1] is DENIED; (3) a

certificate of appealability is DENIED; and (4) a separate judgment shall be entered in this matter.

     **IT IS SO ORDERED** this 27th day of September, 2024.


                                 _____

                                   Sara E. Hill
                                   UNITED STATES DISTRICT JUDGE